[No. 3952.   Decided March 5, 1902.]

COUNTY OF THURSTON, *Respondent,* v. HENRY WALKER,
*Appellant.*

HIGHWAYS — DEDICATION — PLEADING.

In an action to compel defendant to remove obstructions from
a public road and to restrain him from thereafter obstructing the
highway, the complaint alleged "that during all of the times
. . . there has existed a lawful highway or public road thirty
feet in width extending across a portion of said forty acres above
described in this paragraph of the complaint, which highway was
and is for the use, travel, and accommodation of the said plaintiff
and all of inhabitants and of the public in general;" and alleged,
further, that no other highway or public road exists across the
said premises except the one hereinbefore referred to. *Held,* that
the complaint was broad enough to allow facts to be proven show-
ing the establishment of a road by prescription, dedication, or
otherwise.

SAME — EVIDENCE.

Dedication of a highway is sufficiently established where the
evidence shows that a land owner voluntarily laid out a road
through his lands, which was maintained for about three years;
that he then fenced it, but afterwards agreed with the county
commissioners that in consideration of the abandonment by them

of another route surveyed through his land, he would grant the right of way for the road which had been used for three years, placing gates where the fences across it were, and within eight months fence his land so that thereafter the road could be used without obstruction by the public.

Appeal from Superior Court, Thurston County.—Hon. OLIVER V. LINN, Judge. Affirmed.

*George C. Israel* and *H. L. Forrest* (*Horatio Alling*, of counsel), for appellant.

*George H. Funk,* for respondent.

The opinion of the court was delivered by

WHITE, J.—This is an action to compel the appellant to remove obstructions from an alleged highway, and for an order forever forbidding and restraining any obstruction of the said highway by the appellant, his heirs or assigns. The second allegation of the complaint is as follows:

"That the defendant in this action, Henry Walker, is now, and for some years last past has been, the owner and in possession of the following described premises situated in Thurston county, Washington, to-wit, the southwest quarter of the northwest quarter of section 3, township 19 north, of range 2 west, of the Willamette Meridian; that during all of the times in this paragraph of this complaint mentioned there has existed a lawful highway or ~~blic road thirty feet in width extending across a portion of said forty acres above described in this paragraph of the complaint, which highway was and is for the use, travel, and accommodation of said plaintiff and all of inhabitants and of the public in general; that no other highway or public road exists across the said premises of the defendant except the one hereinbefore referred to."

The third allegation of the complaint is to the effect that for a period of several months prior to the commencement of this action the appellant wrongfully and

unlawfully obstructed the said highway by placing fences
and gates across the land described in the second para-
graph of the complaint, and that the appellant still con-
tinues to maintain said obstructions at said two points,
and will in the future continue to maintain them unless
required and ordered by the court to remove the same.
The answer denied all but the ownership of the tract of
land described in the complaint. The only way, in 1893,
and for some years prior to that time, and now, to pass
from the Olympia and Kamilchie road in section 2, town-
ship 18 north, range 3 west, to Hunter's Point, in Thurs-
ton county,—a distance of a little over eight and one-
half miles,—was and is along a road which ran through
the lands of the appellant described in the complaint, or
through lands of the appellant adjoining the lands de-
scribed in the complaint. It is claimed by the respond-
ent, at least inferentially, that this road was a public
road by prescription. The evidence in the case leaves this
matter in doubt, and is far from being sufficient to es-
tablish a highway by prescription through the appellant's
land. The commissioners of Thurston county, however,
as we infer from their acts, as early as 1893 assumed
that the road through the appellant's land was a public
road, and undertook to make more definite and certain
its location, and to that end appointed viewers and a sur-
veyor to view and survey the same, as authorized under
§ 3788, Bal. Code. When the parties engaged in view-
ing the road came to the premises of appellant, he met
them with objections to the route they were following,
and stated to them that, if they would permit the route
to be changed from such route to a point further east,—
being the place where the county now claims the road to
be,—he would give the right of way for a road at that

place. The survey was continued over the land objected to, and is known as the "McFadden Survey," but no effort was ever made to open or travel the portion of appellant's land over which this survey ran. In the fall of 1895, or spring of 1896, the appellant, aided by the witness Libby and his sons, went upon the appellant's land at the place where the appellant said he was willing to have the road laid out, and marked out a line for the road at that place, the appellant stating that if the overseer wanted to open up this he could have the road; if not, he would fight the old (McFadden) survey. The road was thereafter put in shape so that it could be traveled, the labor expended being partly donated by appellant and the witness Libby and partly performed under the supervision of the road supervisor at public expense. From that time forward until the latter part of the year 1898 all persons having occasion to travel to and from Hunter's Point crossed the premises of appellant over the road in controversy without objection on the part of the appellant, and the said road was, under the supervision of the road supervisor, kept open and in a condition for travel at public expense. There is some evidence tending to show that in 1897 or 1898 the appellant protested to the road supervisor that the road was not a public road. During the year 1898 trouble arose between the witness Libby and the appellant, and appellant thereupon caused to be erected across the road upon his premises fences in two different places, the effect being that the witness Libby, whose place was situated further down towards Hunter's Point than the place of the appellant, was completely cut off from access to the highway leading from Hunter's Point to the Olympia and Kamilchie road. In the early part of the year 1899 steps were taken on be-

half of the county of Thurston looking towards the commencement of a suit against the appellant to compel the removal of the fences. Appellant, learning of these proceedings, came with his attorney before the board of county commissioners of Thurston county, then in session, on the 1st of March, 1899, and entered into an agreement with the board as follows:

"The proposition that Henry Walker, in consideration of the abandonment by the county of Thurston of the route surveyed for a road through Mr. Walker's land, and objected to by him at the time of the survey: He grants to the county the right of way for the road as now claimed to be dedicated to the county, Mr. Walker agreeing to put gates where the fence now crosses the road immediately, and within eight months to fence his land so that thereafter the road may be public without obstruction."

The board accepted this proposition, and no further steps were taken to remove the fences. The appellant claims that the board of commissioners agreed to survey the line so he could build his fences along the road. But this was not incorporated in the agreement entered upon the minutes of the board, and it is doubtful whether the agreement to survey the road formed any part of the above agreement. Appellant, after entering into the said agreement with the board, immediately put up gates at the two points where he had obstructed the road by the erection of fences. At the expiration of the eight months he not only refused to remove the gates, but proceeded to lock the same and deny the public the right to use said road. Thereupon this suit was brought. The court found in favor of the respondent, from which finding the appellant appealed.

The road winds in a serpentine way from gate to gate, but runs practically upon the ground intended to be dedi-

cated for a road as testified to by the witness Libby, and practically within the lines described in the complaint. It is objected that the allegation in the second paragraph of the complaint, "that during all of the times . . . there has existed a lawful highway or public road thirty feet in width extending across a portion of said forty acres above described in this paragraph, of the complaint, which highway was and is for the use, travel, and accommodation of the said plaintiff and all of inhabitants and of the public in general," is not equivalent to an allegation that at the time complained of and at the time of the commencement of this action there existed upon appellant's lands a regularly established and open road or thoroughfare and, in order to maintain the cause of action sought to be set forth, such facts must be alleged and proven. We think this allegation, coupled with the allegation that no other highway or public road exists across the said premises of the defendant except the one hereinbefore referred to, is sufficiently broad to allow facts to be proven to establish a road by prescription, dedication, or otherwise.

The other assignment of error is that the court should have granted a non-suit and dismissed the respondent's action after the respondent had rested its case in chief. The only question under this assignment is, are the facts which we have set forth sufficient to establish a dedication of a public road where the gates were built by the appellant? The acts of the appellant in the fall of 1895 and the spring of 1896 in opening the road, in connection with his declarations at the time, indicate that he intended to and did dedicate it at the place opened to the public use as a road. It is not essential to the validity of an express dedication that there should be any precise form of words used, nor that there should be any written instrument.

"An implied dedication is one arising, by operation of law, from the acts of the owner. It may exist without any express grant, and need not be evidenced by any writing, nor, indeed, by any form of words, oral or written. It is not founded on a grant, nor does it necessarily presuppose one, but it is founded on the doctrine of equitable estoppel. As said by the supreme court of the United States, 'the law considers it in the nature of an estoppel *in pais*,' and holds it irrevocable. It may be established by evidence of conduct, and in many ways. In one case it was declared that: 'The authorities show that dedications have been established in every conceivable way by which the intention of the party could be manifested.' If the donor's acts are such as indicate an intention to appropriate the land to the public use, then, upon acceptance by the public, the dedication becomes complete." Elliott, Roads & Streets (2d ed.), § 123.

His agreement afterwards made with the county commissioners amounted to a confirmation on the part of the appellant of the previous dedication, and the erection of the gates under the circumstances does not rebut the intention to dedicate the road, but is to be considered in connection with his agreement with the commissioners, and is evidence, when so considered, of a dedication. The public, as well as individuals, have a right to rely on the conduct of the owner as indicative of his intent. If the acts are such as would fairly and reasonably lead an ordinarily prudent man to infer intent to dedicate, and they are so received and acted upon by the public, the owner cannot, after acceptance by the public, recall the appropriation. Elliott, Roads & Streets, § 124.

We conclude, therefore, that the judgment of the court below must be and it is affirmed, with costs to the respondent.

REAVIS, C. J., and DUNBAR, FULLERTON, HADLEY, ANDERS and MOUNT, JJ., concur.